UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-186

| | | |
|---|---|---|
| **TAMMY MARTINEZ,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on plaintiff's (#11) and defendant's (#13) cross

Motions for Summary Judgment. The matter is ripe for review. Having carefully considered each

motion and reviewed the pleadings, the Court enters the following findings and Order.

## FINDINGS AND CONCLUSIONS

### I.  Administrative History

Plaintiff filed applications for a period of disability and disability insurance benefits under

Title II of the Act and supplemental security income under Title XVI of the Act in January 2013,

alleging a period of disability with an onset date of April 19, 2011 (Tr. 15, 250, 252). The

Commissioner denied plaintiff's applications initially and upon reconsideration. (Tr. 158, 167,

176, 184). At plaintiff's request, Administrative Law Judge Randall D. Huggins ("the ALJ") held

a hearing on her claims on October 15, 2015. (Tr. 33-66). After considering the hearing testimony

and all of the evidence of record, the ALJ issued a written decision finding that plaintiff was not

disabled within the meaning of the Act during the period from her alleged onset date through the

date of the decision. (Tr. 15-26). Plaintiff asked the Appeals Council to review the ALJ's decision,

but the Appeals Council denied that request in February 2017, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-5, 11). Having exhausted her administrative remedies, plaintiff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of that decision.

## II.    Factual Background

The Court adopts and incorporates the ALJ's factual findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, supra.

Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence.   Hays v. Sullivan, supra. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for

additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV.    Substantial Evidence

### A.  Introduction

The Court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. Here, the Court finds that the ALJ's decision was supported by substantial evidence, and it will thus be affirmed.

### B.  Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

a.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b.   An individual who does not have a "severe impairment" will not be found to be disabled;

c.  If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

**C.  The Administrative Decision**

At step one of the sequential evaluation, the ALJ found that plaintiff has not engaged in substantial gainful activity since April 19, 2011, the alleged onset date. (Tr. 18). At step two, the ALJ found that plaintiff has the following severe impairments: fear of large bodies of water; degenerative disc disease; irritable bowel syndrome; anxiety disorder; bipolar disorder; plantar fasciitis; obsessive-compulsive disorder; and post ACL repair. (Tr. 18). At step three, the ALJ found that none of plaintiff's medically determinable impairments, singly or in combination with each other, meets the severity of an impairment in the Listing. (Tr. 18).

Then, before step four, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following exceptions and restrictions: plaintiff can frequently climb ramps and stairs; plaintiff can never climb ladders, ropes, or scaffolds; plaintiff can frequently balance, stoop, kneel, crouch, and crawl; plaintiff should avoid jobs involving

exposure to large bodies of water or unprotected heights or moving mechanical parts; plaintiff is limited to simple work-related instructions and directions, as well as simple routine repetitive tasks but not at a production-rate pace (such as an assembly line); plaintiff is limited to occasional contact with coworkers and the public, and contact with supervisors is limited to job performance only; plaintiff is able to respond appropriately to routine changes in an unskilled work setting; plaintiff must have access to a restroom. (Tr. 20).

At step four, the ALJ found that plaintiff's RFC prevents plaintiff from performing any past relevant work. (Tr. 24). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including inspector, inserter, and getterer (which, according to the DOT, is an applier of a chemical solution to lead wires used to make incandescent lamps). (Tr. 25). As a result, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. (Tr. 26).

**D. Discussion**

The Court has closely read plaintiff's memorandum (#12) supporting her Motion for Summary Judgment (#11). Plaintiff argues that the ALJ erred in three ways: by neglecting to apply a higher age category which would have in turn supported a finding of disabled; by failing to provide a complete analysis of plaintiff's mental RFC; and by improperly relying on testimony from a vocational expert ("VE") that conflicted with job qualifications in the Dictionary of Occupational Titles ("DOT"). The Court will consider each allegation in turn.

*a. The ALJ's application of medical-vocational guidelines*

First, plaintiff alleges that the ALJ erred in his application of the Medical-Vocational Guidelines (or "Grids"). The Grids contain age categories which can affect whether a finding of

disabled is made, and plaintiff notes that the Grids are not meant to be applied mechanically, but can be applied early in borderline cases. Specifically, regulations state that if plaintiff is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled," an older category may be used "after evaluating the overall impact of all the factors of your case." 20 C.F.R. §§ 404.1563(b), 416.963(b). Plaintiff argues, that, since she was within five months of turning 50 when the ALJ issued his decision, the ALJ failed to properly consider her age. In doing so, plaintiff alleges that the ALJ mechanically applied the Grids and notes that doing so is a procedural defect and therefore grounds for remand. See Russell v. Commissioner of Social Sec., 20 F.Supp.2d 1133, 1134-45 (W.D. Mich. 1998); Mitchell v. Astrue, 2011 U.S. Dist. LEXIS 123048 (W.D.N.C. 2011) ("This Court cannot excuse the ALJ's procedural failure, even if his decision were otherwise based on substantial evidence.").

Here, the Court does not find that the ALJ failed to properly consider plaintiff's age. Plaintiff being five months away at the time of the decision cannot be recognized as violating guidelines that state "a few months" as the appropriate period, and furthermore, the Court recognizes that there are "no fixed guidelines as to when a borderline situation exists . . . since such guidelines would themselves reflect a mechanical approach." McGinnis v. Colvin, 2013 WL 3353836, at *3 (W.D.N.C. 2013) (quoting SSR 83-10, holding that eight months was not "a few months" and citing cases from other jurisdictions rejecting similar arguments with respect to a similar period of time); cf. Arnett v. Berryhill, 2017 WL 1659060, at *4 (W.D.N.C. 2017) (holding that a three-month shortfall presented a borderline situation). While it is worth noting that plaintiff does fall in the six-month range that causes district courts to carefully scrutinize the matter,

Williford v. Colvin, 2015 WL 7730978 (W.D.N.C. 2015), this is not a case where remand is required. The ALJ reviewed the Grids and noted plaintiff's age and the implicated categories in making his review. (Tr. 25). Indeed, the ALJ specifically acknowledged that plaintiff had changed age categories throughout the period at issue, which is contrary to plaintiff's assertion that the ALJ focused only on her age at her onset date. (Tr. 25). Furthermore, the ALJ noted that he had taken plaintiff's age into account in his analysis and when seeking the VE's advice. (Tr. 25-26). Finally, the Appeals Council expressly stated that it had considered the borderline age situation and specifically determined that "factors in the record do not support application of the higher age category." (Tr. 2). Thus, the Court does not find that the ALJ incorrectly failed to apply a higher age category to plaintiff, and there is no grounds for remand on this issue.

### b. *The ALJ's analysis of plaintiff's mental RFC*

Next, plaintiff argues that the ALJ failed to properly analyze her mental RFC. Specifically, plaintiff contends that the ALJ found that plaintiff has moderate difficulties in maintaining concentration, persistence, or pace, but completely neglected to determine plaintiff's ability to stay on task. In doing so, plaintiff claims that the ALJ's analysis is incomplete, and requires remand under Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (holding that an ALJ does not account for limitations in concentration, persistence, and pace by restricting plaintiff to routine tasks or unskilled work, as "ability to perform simple tasks differs from the ability to stay on task"). As a result, plaintiff argues that the Court has been "left to guess about how the ALJ arrived at his conclusions" and remand is thus appropriate. Mascio, 780 F.3d at 637.

The court finds, however, that the ALJ properly accounted for plaintiff's ability to stay on task in his mental RFC analysis. Specifically, the ALJ explained that despite plaintiff's mental

impairments, which cause moderate difficulties in concentration, persistence, or pace, plaintiff was capable of simple, routine, repetitive tasks so long as they do not require the type of "production-rate" pace that would be required in assembly-line work. (Tr. 20). In doing so, the ALJ has included a limitation that accounts for the pace of work, and by extension difficulties in concentration, persistence, and pace. See Sizemore v. Berryhill, 2017 WL 6374237, at *5 (4th Cir. 2017) (holding that Mascio does not require remand where an ALJ found that a claimant "would nonetheless be able to say on task while performing 'simple one, two-step tasks,' as long as he was 'working in low stress non-production jobs with no public contact'"); Michaels v. Colvin, 2016 WL 8710975 (W.D.N.C. 2016), aff'd, 2017 WL 4176228 (4th Cir. 2017) (unpublished) ("Consistent with Mascio, the ALJ limited the RFC not only to simple routine repetitive tasks but also to 'work at a nonproduction pace rate'"). Thus, the Court finds that the ALJ did properly explain and analyze plaintiff's mental RFC, and there is no basis for remand on this issue as the Court has not been left to guess at the ALJ's rationale.

### c.  The ALJ's reliance on VE testimony

Finally, plaintiff argues that the ALJ improperly relied on VE testimony, in that the three potential jobs specified by the VE conflict with the ALJ's restrictions on pace. Plaintiff contends that the DOT description for dowel inspector suggests the job is part of the production process of dowels, that lens inserters place frames on a conveyor belt and thus appear to work on an assembly line at production rate pace, and that a getterer is part of the production of incandescent lamps. As the ALJ found that plaintiff could not perform jobs at a production-rate pace, plaintiff contends that that the ALJ failed to deal with these conflicts and that the ALJ's duty to eliminate conflicts between VE testimony and the DOT's job descriptions is not fulfilled "merely because the [VE]

responds 'yes' when asked if h[is] testimony is consistent with the [DOT]." Pearson v. Colvin, 810 F.3d 204, 208 (4th Cir. 2015).

However, plaintiff's argument is largely without merit. An apparent conflict is defined as a conflict that is "obvious" or "seeming real or true, but not necessarily so." Pearson, 810 F.3d at 209. The Court agrees that an apparent conflict, albeit a tenuous one, exists between the job of lens inserter, which requires plaintiff to work by placing materials on a conveyor belt, and the hypothetical presented to the VE that plaintiff not work at a production-rate pace. However, the Court cannot find even an apparent conflict with the proposed jobs of dowel inspector and getterer. Plaintiff argues that these roles are involved with the production process of dowels and incandescent lamps, respectively, and therefore must conflict with the limitation of not working at a production rate pace. The Court cannot agree, as such a conflict implies that being involved with the production of any good in any way implies a production rate or pace. Nothing in the DOT's description for dowel inspector or getterer has anything to do with rate or pace, which is what the limitation in question was designed to restrict. As a result, even if the Court did find a conflict existed between VE testimony and the DOT's description for lens inserter, there are still two jobs existing in significant numbers in the national economy, and that the existence of one would be sufficient to justify a finding that plaintiff is not disabled within the meaning of the Act. As a result, the Court finds any error by the ALJ on this front is harmless, and therefore finds no grounds for remand.

### E.  Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's complaint, the cross Motions for Summary Judgment, and accompanying

memoranda. Review of the entire record reveals that the decision of the ALJ was supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. As this Court finds that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for Summary Judgment (#11) is **DENIED**, the Commissioner's Motion for Summary Judgment (#13) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

Signed: February 2, 2018

Max O. Cogburn Jr.
United States District Judge